## HIGGINS *v.* GRAUL.

*(Supreme Court, General Term, Second Department.* May 14, 1888.)

1. REPLEVIN—EVIDENCE—SUFFICIENCY TO SUPPORT VERDICT.

In replevin for chattels, plaintiff testified that he gave defendant a bill of sale of the property without consideration; the latter to hold the same until plaintiff could pay his debts. Defendant's testimony tended to show that the instrument was given to secure an indebtedness, and to protect defendant from liability to a third party, who at defendant's instance had become surety for plaintiff. Several witnesses testified that plaintiff had stated to them that the property belonged to defendant; that he owed defendant, and turned over the property. *Held,* that a verdict for defendant was warranted by the evidence.

2. SAME—TRIAL—INSTRUCTIONS.

In replevin for chattels, where plaintiff testifies that he gave the property to defendant to hold until he, plaintiff, could pay his debts, an instruction that such statement is absurd and untrue is not error.

3. CHATTEL MORTGAGES—DELIVERY OF CHATTELS NOT NAMED—RIGHTS OF MORTGAGEE.

Where a bill of sale is made as mortgage security, and other property not mentioned in the instrument is turned over at the same time for the same purpose, the creditor is entitled to possession of the entire property until the debt is paid.

Appeal from circuit court, Queens county; JOSEPH F. BARNARD, Justice.

Replevin by John Higgins against John Graul for certain described chattels, or the value thereof. Plaintiff had given to defendant a bill of sale of the property, assigning as a reason: "I gave it to him to hold until I could pay up every debt I owed in the world." He further testified that he received no consideration for the same. Defendant's testimony tended to show that the bill of sale was made to secure an indebtedness for money loaned and services rendered, and to protect defendant from liability to a third party, who, at defendant's instance, had become security for plaintiff. Several witnesses testified that plaintiff had stated to them that the property belonged to defendant, that he owed defendant money which he could not pay, and had turned over the property. The bill of sale was made in Pennsylvania, the property being there at the time, and some property not mentioned in the bill was turned over to defendant. The complaint mentioned a number of articles not referred to in the bill of sale. The charge of the court was substantially as follows: "The plaintiff says: 'I loaned a number of articles to Graul, who was to return them to me on demand.' That is a simple statement of an innocent and honest transaction, as to which there would be no doubt. He is asked, 'Did you not give a bill of sale of this property,' and he answers, 'Yes.' 'Why did you do that?' 'I gave it to him to hold until I could pay up every debt I owed in the world.' Well, gentlemen, it is very manifest that that is not the real transaction. There may be no dishonor in it, but that a man should strip himself of his own property, and put it into the hands of a stranger, until he can pay his debts, and then get his property back, seems so absurd that I have no hesitation in saying that it is not true. Why do I speak of it all? It is to say that this transaction is susceptible of two constructions, either of which gives the judgment to this defendant: *First.* If Higgins put this property in Graul's hands because he was in debt, and in order to interpose a title between his property and his creditors, that was illegal, and in doing it Higgins parted with his title forever as between him and Graul. The law is not open for him when he does that to say: 'I want the property back.' Therefore, if you find that to be the true history of this transaction, Higgins fails. *Secondly.* Graul could become security for Higgins in Pennsylvania, either by signing the bond, or by securing this Pennsylvanian, who did sign it; and they say the latter was done. If this assignment was made to Graul to protect him in that, then it appears that the other man has paid the debt, and nobody has paid him; consequently it is an outstanding obligation, as against Graul, and Graul is entitled, even upon the statement made by Mr. Higgins himself, to hold that property until he is paid. It seems there is some claim made that some of the property in question was not in the bill of sale. Well, gentlemen, there I am at sea. I don't know which of the articles on the list are included in that claim, nor do I know what is the list contained in the bill of sale. But I say to you that if this property was given to Graul under a bill of sale, according to the defendant's theory to protect the boy's bill, and to protect the bill of Graul, and some of the property was in the hands of Graul, and the bill of sale included property other than that, and it was altogether put in Graul's hands as such security, then Graul is entitled to hold it whether it is in the bill of sale or not. If you find that the bill of sale is good, you will strike out all that is in it; or if you find that this property was pledged to pay young Graul's debt, then no matter if possession was delivered, whether the property is in the paper or not, the defendant can hold it." There was a judgment for defendant, and plaintiff appeals.

*Clarence A. Drew,* for appellant.   *Jerry A. Wernberg,* for respondent.

PRATT, J. The charge of the court was explicit and complete. It presented all the questions to the jury in a manner of which defendant had no ground to complain. The verdict was entirely justified by the evidence. Probably any other verdict would have been set aside as against evidence. Judgment affirmed, with costs.